UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TORAN V. PETERSON,

               Plaintiff,

v.

UNKNOWN CLOUSE et al.,

               Defendants.

_____/

Case No. 1:19-cv-505

Honorable Paul L. Maloney

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983, 1985, and 1986.  Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's conspiracy claims under § 1983 and 1985 and his claims under § 1986.  Plaintiff's retaliation claims against Defendants Clouse, Bassett, Johnson, Annis, McGlone, and Vogue remain in the case.

## Discussion

I.      Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues the following ECF officials: Assistant Deputy Warden (ADW) Clouse; Grievance Coordinator T. Bassett; Prison Counselor K. Johnson; and Correctional Officers (unknown) Annis, (unknown) McGlone, and (unknown) Vogue.

Plaintiff alleges that, on June 5, 2019, he sent a kite to Defendant Clouse, complaining that the unit rules were not posted and asking for a copy of the rules.  He also indicated that, if he did not hear from Defendant Clouse within two business days, he would file a grievance, in order to comply with the time for filing grievances.

When Plaintiff did not receive a response, he filed a grievance on June 10, 2019.  Defendant Bassett and ADW Spencly (not a Defendant) rejected the grievance on June 11 and returned it to Plaintiff on June 12, 2019.  Defendant Bassett also sent a message, indicating that, if Plaintiff continued on his current path, "they would have something in store for [him]."  (Compl., ECF No. 1, PageID.2.)  Plaintiff alleges that he had already requested a Step-II grievance appeal form before he read the communication.  Had he read Bassett's message first, Plaintiff would not have requested the Step-II grievance.

On June 13, 2019, Plaintiff overheard Defendant Johnson tell Defendant Vogue that she had received a phone call from Defendant Clouse about Plaintiff's grievances and "that he knew what to do." (*Id.*, PageID.3.)  Within two minutes, Plaintiff heard Defendant Vogue call Defendants Annis and McGlone to the bubble.  Five minutes later, Defendants Annis and McGlone

2

searched Plaintiff's cell for 30 minutes. Before entering Plaintiff's cell, Defendants closed the window on the cell across from Plaintiff, so that the neighboring prisoner could not observe them. Plaintiff left the electronic law library, but he was made to wait for the cell search to be completed. The search was undertaken at an unusual time of the day.

When he was allowed to return to his cell, Plaintiff found that his papers were strewn across the floor, with a new bottle of barbeque sauce poured over them. Defendants had also opened two new boxes of snack crackers, two honey buns, twelve noodle packs, one cheese, one peanut butter, and one pickle. They had also poured the pickle juice over Plaintiff's sheets and shirts, and they took the kite that Bassett had sent the night before. Plaintiff was forced to throw out his food.

On June 14, Plaintiff asked Defendant McGlone why they had ruined his property. McGlone responded that it was not personal, but they had to send Plaintiff a message about all of his grievance activities. McGlone advised Plaintiff that all he had to do was stop what he was doing. That same day, Plaintiff also asked Defendant Annis why he did what he did. Annis responded, "I was just going off of what Vogue told me." (*Id.*)

Plaintiff also spoke with Defendant Johnson on June 14. Plaintiff told Johnson that he planned to sue her for having the officers retaliate against Plaintiff. Defendant Johnson stated that the search had nothing to do with her. She stated that Defendant Clouse had told her the prior afternoon that Defendant Bassett had phoned Clouse about Plaintiff's Step-II grievances against Bassett and Spencly. She said, "That has nothing to do with me.[] If you continue you're going across the bridge or somewhere you don't want to go (the hole) instead of Macomb (corr. fac.)." (*Id.*)

Plaintiff alleges that he had been on loss-of-privileges sanctions, which were waived on May 31, 2016, for a 30-day period. On June 16, 2019, an officer advised Plaintiff that his sanctions-waiver had been terminated. Plaintiff asked Johnson why his waiver was terminated. She responded that Defendant Clouse had terminated the waiver and that Plaintiff knew why.

Plaintiff contends that Defendants Clouse, Bassett, Johnson, Vogue, Annis, and McGlone conspired to retaliate and retaliated against Plaintiff for filing a grievance against Defendant Clouse and for attempting to appeal that grievance to Step-II, in violation of the First Amendment under 42 U.S.C. §§ 1983 and 1985. Plaintiff also alleges that Defendants Johnson, Vogue, Annis, and McGlone neglected or refused to prevent the retaliatory actions of the other Defendants, in violation of 42 U.S.C. § 1986. Further, Plaintiff contends that Defendants' conduct constituted the following Michigan torts: gross negligence, Mich. Comp. Laws § 691.1407(2); intentional infliction of emotional distress, Mich. Comp. Laws § 418.131(1); willful and wanton misconduct, Mich. Comp. Laws § 600.6304(8); concert of action and civil conspiracy, Mich. Comp. Laws § 600.6304; negligence; and failure to follow MDOC Policy Directives 03.02.130 and 03.03.130.

Plaintiff seeks compensatory and punitive damages.

II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

## A.    Conspiracy

Plaintiff alleges that Defendants conspired to retaliate against him, in violation of 42 U.S.C. §§ 1985(3) and 1983. He also alleges that Defendants Johnson, Vogue, Annis, and McGlone had the ability to prevent a civil conspiracy under § 1985 by going to the warden, but they neglected to do so, in violation of 42 U.S.C. § 1986.

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp*., 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). The

plaintiff further must demonstrate that the conspiracy was motivated by a class-based animus, such as race. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Collyer*, 98 F.3d at 233; *Johnson*, 40 F.3d at 839; *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).

Plaintiff has not alleged or established that he is a member of a discrete and insular minority accorded special protection under the Equal Protection Clause because of inherent personal characteristics. *Seguin*, 968 F.2d at 590. He also has not alleged that any Defendant's actions were motivated by his membership in any such group. Accordingly, Plaintiff fails to state a civil conspiracy claim under § 1985.

Plaintiff's § 1985 claim fails for an additional reason, which also interferes with his § 1983 claim: both claims are barred by the intracorporate conspiracy doctrine. The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991). The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3). *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839-40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510). Recently, in *Jackson v. City of Cleveland*, 925 F.3d 793, 817-19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985. As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and not capable of conspiring. *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, ___ F.3d ___, No. 18-3373, 2019 WL 3403893, at *11 (6th Cir. July 29, 2019).

Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location (ECF). Plaintiff does not even allege, much less show, that Defendants were acting outside the scope of their employments. The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place." *Johnson*, 40 F.3d at 840. "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy." *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)). In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation." *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*

Plaintiff alleges no facts suggesting that Defendants were acting outside the normal course of their duties, however improperly he believes they may have been exercising those duties. As a consequence, Plaintiff does not establish the exception to the intracorporate conspiracy doctrine for actions taken outside the scope of employment. Plaintiff's conspiracy claims under both § 1983 and § 1985 therefore are barred under the intracorporate conspiracy doctrine.

Plaintiff's claim under § 1986 fails because he fails to state a conspiracy claim under § 1985. Section 1986 provides as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act, which such person with reasonable diligence could have prevented . . . .

7

42 U.S.C. § 1986. The cause of action under § 1986, by its terms, is premised on the violation of

§ 1985. Because Plaintiff fails to state a claim under § 1985, his claim under § 1986 fails as well.

*Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000) (explaining that § 1986 is derivative and

conditioned on establishing a § 1985 violation); *Browder v. Tipton*, 630 F.2d 1149, 1154 (6th Cir.

1980) (same).

### B. Retaliation

Plaintiff claims that all Defendants retaliated against him for filing grievances and

complaints. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates

the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order

to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged

in protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least

in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise

of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory

conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City*

*Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

On initial review, the Court concludes that Plaintiff has alleged sufficient facts to

support his claim that all Defendants engaged in retaliatory conduct or condoned, encouraged, or

knowingly acquiesced in such conduct. *See Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir.

2005) (reiterating standard for supervisory liability); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th

Cir. 1984) (same). Plaintiff's retaliation claims against all Defendants therefore remain in the case.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the

Court determines that Plaintiff's conspiracy claims under §§ 1983 and 1985 and his claim under

§ 1986 will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b),

and 42 U.S.C. § 1997e(c).  Plaintiff's retaliation claims against all Defendants remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 16, 2019                    /s/ Paul L. Maloney
                                            Paul L. Maloney
                                            United States District Judge