UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TORAN V. PETERSON #318935,

    Plaintiff,                                      Hon. Paul L. Maloney

v.                                                          Case No. 1:19-cv-505

UNKNOWN CLOUSE, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 67.) Plaintiff has failed to respond within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.*, 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)). Pursuant to 28 U.S.C. § 636(b)(1)(B), and concluding that Defendants have not discharged their burden, I recommend that their motion be **DENIED**.

**Background**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), sued MDOC employees Assistant Deputy Warden (ADW) Clouse, Grievance Coordinator T. Bassett, Prison Counselor K. Johnson, and Correctional Officers (unknown) Annis, (unknown) McGlone and (unknown) Vogue, pursuant to 42 U.S.C. § 1983, alleging that they retaliated against

him for filing a grievance while he was housed at the Oaks Correctional Facility (ECF) in Manistee, Michigan.

Plaintiff alleges that on June 5, 2019, he sent a kite to Defendant Clouse, complaining that the unit rules were not posted and asking for a copy of the rules. Plaintiff also indicated that he would file a grievance if he did not hear from Clouse within two days. (ECF No. 1 at PageID.2.) Plaintiff did not receive a response and filed a grievance on June 10, 2019. Defendant Bassett and non-defendant ADW Spencly rejected the grievance on June 11 and returned it to Plaintiff on June 12, 2019. (*Id.*; ECF No. 68-2.) Defendant Bassett also sent a kite, stating that if Plaintiff continued on his current path, "they would have something in store for [him]." Plaintiff alleges that he requested a Step II appeal form the same day, before he read Bassett's note. Plaintiff states that, had he read Bassett's message first, he would not have requested the Step II form. (*Id.*)

On June 13, 2019, Plaintiff overheard Defendant Johnson tell Defendant Vogue that she had received a phone call from Clouse about a grievance Plaintiff wrote on Clouse and "that he (Vogue) knew what to do." (*Id.* at PageID.3.) Within two minutes or less, Plaintiff heard Defendant Vogue call Defendants Annis and McGlone to the bubble. Five minutes later, Plaintiff's electronic law library time was up, and an officer told Plaintiff to wait in the dayroom because his cell was being searched. Defendants Annis and McGlone searched Plaintiff's cell for 30 minutes. Before entering Plaintiff's cell, Defendants Annis and McGlone had closed the window shutter on the cell across from Plaintiff's cell so that the prisoner in that cell could not see what they were doing. (*Id.*)

When Plaintiff returned to his cell, he alleges he found his papers strewn across the floor with barbecue sauce from a new bottle Annis and McGlone had opened poured all over them. Defendants had also opened two new boxes of snack crackers, two honey buns, twelve noodle packs, one cheese, one peanut butter, and one pickle. They had poured the pickle juice over

Plaintiff's sheets and shirts and took the kite that Defendant Bassett had sent to Plaintiff the previous night. Plaintiff was forced to throw his food out. (*Id.*)

On June 14, 2019, Plaintiff asked Defendant McGlone why they had ruined his property. McGlone told Plaintiff that it was not personal, but they had to send Plaintiff a message about all of his grievance activities. McGlone told Plaintiff that all he needed to do was stop doing what he was doing (filing grievances). Later that day, Plaintiff asked Defendant Annis why he did what he did. Annis responded, "I was going off what Vogue told me." (*Id.*) Plaintiff also spoke to Defendant Johnson on June 14, telling her that he was going to sue her for having the officers retaliate against him. Johnson said that the search had nothing to do with her. Johnson stated that Clouse had told her the prior afternoon that Defendant Bassett had phoned him about Plaintiff's Step II grievances against Bassett and Spencly. Johnson said, "That has nothing to do with me.[] If you continue you're going across the bridge or somewhere you don't want to go (the hole) instead of Macomb (corr. fac.)." (*Id.*)

Plaintiff alleges that he had been on loss-of-privileges sanctions, which had been waived on May 31, 2016, for a 30-day period. On June 16, 2019, an officer advised Plaintiff that his waiver had been terminated. Plaintiff asked Defendant Johnson why his waiver had been terminated. She responded that Defendant Clouse had terminated the waiver and that Plaintiff knew why. (*Id.* at 3–4.)

## Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**Discussion**

The requirements for a valid First Amendment retaliation claim are well established. In order to state a First Amendment retaliation claim, a plaintiff must establish that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants concede that Plaintiff can establish the first two elements of his claim. They contend, however, that his claim fails on the causal connection requirement, as set forth in their affidavits. The argument begins with Defendant Bassett, who states that he processed and rejected Plaintiff's grievance but did not write and include a kite with the grievance response that he returned to Plaintiff. Bassett further states that he never contacted Defendant Clouse or any other MDOC staff regarding Plaintiff's grievance. (ECF No. 68-3 at PageID.338.) Next, Clouse states in his affidavit that he does not recall receiving a kite from Plaintiff about housing rules not being posted in his unit. Clouse confirms Bassett's claim that Bassett never contacted him about Plaintiff's grievance. Clouse further denies contacting Defendant Johnson about Plaintiff's grievance. (ECF No. 68-4 at PageID.342.) Defendant Johnson, for her part, states that Clouse never

4

called or contacted her about Plaintiff's grievance, and she says that she was not aware that Plaintiff had sent a kite to Clouse about the unit rules. While Johnson does admit that she requested Defendants Annis and McGlone to search Plaintiff's cell on June 13, 2019, she does not recall why she made the request. (ECF No. 68-5 at PageID.346.) Next, Defendant Vogue states that he never spoke to Johnson about Plaintiff or any grievance that he may have filed and does not recall calling Defendants Annis and McGlone to the bubble to request that they search Plaintiff's cell. (ECF No. 68-6 at PageID.350.) Finally, Defendants Annis and McGlone state that Vogue never paged them over the loudspeaker on June 13, 2019, but Johnson did contact them and asked them to search Plaintiff's cell for a weapon. Annis and McGlone further state that they left Plaintiff's cell in the condition they found it and did not dump his food out or damage his property. (ECF No. 68-7 at PageID.354; ECF No. 68-8 at PageID.358.)

Defendants argue that Plaintiff leaps to the conclusion that his grievance was the sole reason Defendants Annis and McGlone searched his cell and contend that he has provided no evidence to prove the requisite causal connection for his claim. They further argue that Defendant Bassett (the only person who knew about Plaintiff's grievance) and Defendant Clouse confirm that they never spoke about it. (ECF No. 68 at PageID.325.) Thus, they argue, Plaintiff's claim must fail.

However, Defendants neglect to consider that Plaintiff verified his complaint in accordance with 28 U.S.C § 1746, and they fail to acknowledge that it functions as an affidavit for purposes of their motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (noting that the plaintiff's verified complaint carried "the same weight as would an affidavit for the purposes of summary judgment"). Defendants therefore do not explain why Plaintiff's factual allegations in his verified complaint do not create an issue of fact for the jury. Because Plaintiff

5

claims that he heard Defendant Johnson tell Defendant Vogue that Defendant Clause had called or contacted her about Plaintiff's grievance, it may be inferred that Defendant Bassett—the only Defendant who was aware of the grievance—told Defendant Clause about it.

There is no apparent reason why Plaintiff's testimony regarding the facts in his complaint would not be admissible at trial. Defendants certainly offer no reason why that would be so. Accordingly, Defendants have failed to show that they are entitled to summary judgment.

Defendants also contend that they are entitled to qualified immunity, but this argument assumes that the facts they present in their affidavits have been established for purposes of the instant motion. As discussed above, that is not the case. An issue of fact remains for the jury, and if the jury accepts Plaintiff's version of events, Plaintiff will have established a violation of his First Amendment rights. Moreover, because the law is clearly established that a prison official may not retaliate against a prisoner for engaging in protected conduct, *see Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018), Defendants are not entitled to qualified immunity.

Accordingly, Defendants fail to satisfy their burden on summary judgment.

## Conclusion

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment (ECF No. 67) be **denied**.

Dated: March 16, 2021                              /s/ Sally J. Berens
                                                   SALLY J. BERENS
                                                   U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).